Clifford RUFF and Betty E. Ruff, Plaintiffs and Appellees,

v.

Milton SCHMEICHEL and Mavis Schmeichel, Defendants and Appellants.

Milton SCHMEICHEL and Mavis Schmeichel, d/b/a Yankton Canvas and Cushion Company, Plaintiffs and Appellants,

v.

Clifford RUFF et al., Defendants and Appellees.

Civ. Nos. 8990, 8991.

Supreme Court of North Dakota.

June 27, 1974.

Charles J. Gilje, Jamestown, for appellants.

Kessel, Splitt & Kessel, LaMoure, for appellees.

ERICKSTAD, Chief Justice.

This is a consolidated appeal from two judgments entered in the District Court of Stutsman County, North Dakota, on September 27, 1973, in two separate cases. The two cases were by stipulation tried together. One case involved an action in forcible detainer brought by Clifford Ruff and Betty C. Ruff, hereinafter referred to as "Ruffs", against Milton Schmeichel and Mavis Schmeichel, hereinafter referred to as "Schmeichels"; the other case involved an action for specific performance brought by Schmeichels, doing business as Yankton Canvas and Cushion Company, against Ruffs and a third party, E-Z Sales, Inc. Schmeichels' specific-performance action was dismissed, and Ruffs were awarded judgment in their forcible detainer action. Schmeichels have appealed both judgments to this court. The appeals were briefed and argued together and will be resolved together in this opinion.

Schmeichels as lessees entered into a lease agreement with Ruffs as lessors on February 18, 1972, whereby Schmeichels rented a building from Ruffs, to be used in their business of manufacturing harvester canvases for swathers for a term of one year commencing March 1, 1972, and ending February 28, 1973. Crucial to this appeal is a provision in the lease agreement which gave Schmeichels the right of first refusal. That provision reads:

"For the consideration aforesaid, the Lessor hereby gives and grants unto the Lessee, their successors and assigns, the right of first refusal on purchase of said premises for a sum agreeable to the parties for the term of this lease and ninety days. The Lessors agree that if said premises are sold during the term of this lease, plus ninety days, the Lessees have the right to meet any bonafide offer. Should the Lessees decide to purchase said premises at a price as agreed upon by the parties or at an offer acceptable to the owner which would be met by the lessees, the lessees shall receive credit on said purchase for the rentals which they have paid, less the amount paid for the year by the owner-lessor for taxes and insurance on said premises."

The Schmeichels offered to purchase the building in October of 1972 for $44,000 and again in February of 1973 for $44,000. Apparently, no action was taken by the Ruffs on these offers. On April 20, 1973, the Ruffs received a firm bid from E-Z Sales, Inc. for the building occupied by the Schmeichels, in the amount of $46,500. On April 20, 1973, Mrs. Ruff, accompanied by her son, took the written bid to Mr. Schmeichel, who, the evidence shows, took it from the envelope and read it. Mr. Schmeichel requested two weeks' time. There was no mention by either party of $46,500 being the bid price. About two weeks later Mr. Schmeichel presented Mrs. Ruff with a written offer to purchase the building for $46,000.

Mr. Schmeichel testified at trial that he recalled the figure of $46,000 on the bid of E-Z Sales, not $46,500, and that he and his

wife intended to meet the bid of E–Z Sales, Inc. Mrs. Ruff testified that when Mr. Schmeichel presented her with the $46,000 offer she was immediately aware that it was $500 less than the offer of E–Z Sales, Inc., and although surprised she did not advise Mr. Schmeichel that his offer was rejected.

On May 18, 1973, the Ruffs entered into a purchase agreement with E–Z Sales, Inc. selling the property for $46,500 and accepting $1,000 as earnest money. Mrs. Ruff testified she went to see the Schmeichels on May 18, 1973, to tell them the Ruffs were going to accept E–Z Sales, Inc.'s purchase offer. The Schmeichels were not present when Mrs. Ruff arrived, so she left the following note:

"If you want to rent after May 29, or if they give you time to stay in you will have to see E–Z Sales Company Mr. Taft."

"A friend
"Clifford Ruff"

It was at this point the Schmeichels contacted an attorney, who thereafter, on May 22, 1973, wrote to the Ruffs and E–Z Sales, Inc., informing them of Schmeichels' intention to meet any bona fide offer in accordance with the terms of the lease. The pertinent part of that letter reads:

"Mr. and Mrs. Schmeichel will stand by their right to have the premises offered to them at the price offered by E–Z Sales Company and accepted by you, Mr. and Mrs. Clifford Ruff. Please submit to me immediately a copy of the agreement entered into between E–Z Sales Company and the Ruffs on the purchase of the premises so that I can advise my clients of the price they must meet."

The following day, May 23, 1973, the Ruffs, through their attorney, responded by acknowledging the offer of E–Z Sales, Inc. in the amount of $46,500. The pertinent part of that letter follows:

"I write this letter on behalf of Mr. and Mrs. Clifford Ruff of Edgeley, North Dakota. On April 20, 1973 you were personally notified by Mrs. Clifford Ruff that they had a firm offer to purchase the following described premises situated in the City of Jamestown, County of Stutsman, State of North Dakota, to-wit:

"All of Lots Three (3) through Ten (10), both inclusive in Block Three (3); all of Block Seven (7) and all of Block Eight (8) in Atkinson and Pannell's Addition to the City of Jamestown, North Dakota.

"for the sum of $46,500 from E. Z. Sales Inc. of Jamestown, North Dakota. You were further notified that pursuant to the terms of your Lease Agreement you had an opportunity to meet this offer any time before May 29, 1973.

"Subsequently you made a counter offer which offer was not acceptable to Mr. and Mrs. Ruff and you were notified accordingly.

"You are now notified that you must meet the firm offer of $46,500.00, less $6,000.00 for rentals paid, plus taxes and insurance paid by the Ruff's which amount to $1,272.00.

"This must be a cash deal and the balance of $41,772.00 must be paid to the Ruff's or deposited in some bank before the expiration date of May 29, 1973."

By their May 23 letter the Ruffs seemed to agree that the Schmeichels had until May 29, 1973, to meet any bona fide offer, since it was on that date that the year and 90 days expired.

At this point, it is apparent that the Ruffs would benefit more by selling to E–Z Sales, Inc. than to the Schmeichels, since under the lease if Schmeichels met the offer, Ruffs were to credit them with the rentals they had paid. While the Ruffs were to receive $46,500 from E–Z Sales, Inc., the Schmeichels could meet E–Z Sales, Inc.'s firm offer by paying a balance of $41,772 ($46,500 less $6,000 for rentals

paid, plus taxes and insurance paid by Ruffs, amounting to $1,272).

In the May 23, 1973 letter, the Ruffs took the position that the lease provisions granting Schmeichels one year plus ninety days to meet any bona fide offer meant that not only must the Schmeichels exercise the option within that period ending May 29, 1973, but they must also pay $41,772 to Ruffs or deposit it in a bank prior to that date.

On May 25, 1973, the Schmeichels prepared and served upon the Ruffs a notice of intention to purchase, informing the Ruffs they were exercising their right under the lease agreement to meet the bona fide offer of E–Z Sales, Inc.; they further requested an abstract so that it could be given to the financial institution from which Schmeichels sought a loan to finance the purchase, so that the loan processing could begin.

A copy of the notice of intention to purchase was sent to Ruffs' attorney on May 25, 1973, with an accompanying letter wherein Schmeichels took the position that they were doing all that the lease agreement required of them, that is, giving notice of their intention to meet the offer within the period of the lease contract, ending May 29, 1973.

The pertinent part of the notice reads:

"NOW THEREFORE, you are hereby notified that the undersigneds have and do hereby so declare and exercise and do hereby agree to meet and do meet the bona fide offer paid by said E–Z Sales, Inc."

The pertinent part of the accompanying letter reads:

"As indicated therein Mr. and Mrs. Schmeichel are exercising their right under the lease agreement and they are meeting the bona fide offer made by E–Z Sales, Inc. They have requested an updated abstract together with a copy of the agreement or whatever other writing there is evidencing the bona fide offer or contract they, the Ruffs, had with E–Z Sales, Inc."

On June 4, 1973, the Schmeichels were informed by the Ruffs, through a letter from their attorney, that they could pick up the abstract from the Stutsman County Abstract Company and that seven days later, on June 11, 1973, the Ruffs expected the Schmeichels' financing to be completed. By telephone call from Schmeichels' attorney, the Ruffs were informed through their attorney that the Schmeichels could not have the money available by June 11, 1973, since the financing would not be completed.

Mr. Schmeichel testified that following the service of the notice of intention to purchase, the Schmeichels sought the necessary financing. According to Mr. Schmeichel the Schmeichels went to the Stutsman County State Bank, the Credit Union, Gate City Savings & Loan, and First Federal Savings & Loan. The Stutsman County State Bank stated there was a dispute as to title and that E–Z Sales, Inc. had made a loan application for the purchase of the same building, so they felt they were in no position to make a loan to the Schmeichels. Gate City Savings & Loan was aware of the dispute involving the purchase of the building and chose not to get involved. First Federal Savings & Loan did take Schmeichels' application for a loan and eventually, but not before July 17, approved the loan. The vice-president of First Federal Savings & Loan in Jamestown testified that the Schmeichels contacted him around the first week in June and a verbal commitment was given to the Schmeichels by First Federal at about that time, provided they produced a proper down payment and property title was good.

On June 13, 1973, the Ruffs sent another letter to Schmeichels, setting June 20, 1973, as the closing date, and saying:

"This letter is now written on behalf of and at the request of Mr. and Mrs. Clifford Ruff. If settlement is not made be-

fore 2:00 o'clock P.M. on Wednesday, June 20, 1973 then there will be no further negotiations and the sale of the premises will be made to E–Z Sales Inc. of Jamestown, North Dakota. All obligations that the Ruffs may have had will cease at that time. This is the last and final concession."

On June 19, 1973, the Schmeichels through their attorney sent a letter to Ruffs' attorney, saying:

"Mr. and Mrs. Schmeichel are requesting an extension on this until July 14, 1973. They have just not had sufficient time to secure the loan. Mr. Schmeichel's business is seasonal as Mr. and Mrs. Ruff well know and he will have money coming in July and August.

"We intend to rely on their right to a reasonable time and I question whether the middle of July would be considered unreasonable by any court of law."

The Ruffs replied to this letter on June 28, 1973, saying:

"Mr. and Mrs. Ruff will grant an extension to Mr. and Mrs. Schmeichel as requested until Saturday, July 14, 1973. The Ruffs and I will appear at your office the following Monday at 9:30 o'clock A.M. to pick up the money and deliver the deed.

"Pursuant to the terms of our telephone conversation, this extension is granted only with the understanding that if the Schmeichels cannot obtain a loan and pay the full purchase price to the Ruffs on the morning of July 16 that the property will be sold immediately on that date to E–Z Sales Inc. of Jamestown, North Dakota and with the further understanding that the premises must be vacated by the Schmeichels not later than Friday night, July 20 at which time possession must be given to E–Z Sales.

"Unless your clients agree to this in writing before July 1, 1973, the exten-

sion herein granted will be revoked immediately.

"We cannot jeopardize the sale to E–Z Sales and the possession to them must be guaranteed on July 20."

On July 5, 1973, not having received a letter from the Schmeichels, the Ruffs notified the Schmeichels by letter that the extension was revoked. They said:

"Mr. and Mrs. Clifford Ruff of Edgeley, North Dakota agreed to grant an extension, as requested by Mr. Gilje in his letter dated June 19, 1973, to Mr. and Mrs. Schmeichel until Saturday, July 14, 1973. However, this extension was granted only with the understanding that if Mr. and Mrs. Schmeichel cannot complete their loan and pay the full purchase price on the morning of July 16, 1973 that they then would agree to vacate the premises not later than Friday night, July 20, at which time possession would then be given to E–Z Sales Inc.

"This extension was further granted with the provision that Mr. and Mrs. Schmeichel would agree to vacate the premises, if the loan was not completed, and that this consent would be conveyed to me by them before July 1, 1973. Mr. and Mrs. Ruff and I have waited until July 5, 1973 and have heard nothing from you.

"Under the circumstances, Mr. and Mrs. Ruff are revoking the extension granted until July 14, 1973 and this revocation is effective as of this date.

"The premises are being sold to E–Z Sales Inc. of Jamestown, North Dakota.

"The Ruffs at this time are further notifying you that your tenancy from month to month is hereby terminated and the premises must be delivered to E–Z Sales no later than August 1, 1973."

The Schmeichels assert that since they exercised the option to purchase by the notice of intention to purchase and by letter

dated May 25, 1973, they thereafter had a reasonable time in which to raise the money; that by raising the money by July 17, 1973, they acted within a reasonable time; and they therefore are entitled to specific performance of the contract.

Ruffs assert that they stood the risk of losing the sale to E–Z Sales, Inc. unless they acted in a reasonable time with respect to their obligation to provide Schmeichels with the right of first refusal, and that the time they afforded the Schmeichels was a reasonable time. Accordingly, they are now entitled to possession of the premises, since the Schmeichels have failed to make payment for the purchase price or indicate acceptance of the extensions granted to them within which to make payment.

Schmeichels further assert that they were required to meet only an offer which was acceptable to the Ruffs, and since the Ruffs did not say to the Schmeichels when they presented the written offer of E–Z Sales, Inc. to them that the offer was acceptable, the Schmeichels had no obligation to act in regard thereto.

We think it significant that when the E–Z Sales, Inc. offer was read by Mr. Schmeichel he asked for two weeks' time. If he did not believe that the Ruffs considered the E–Z Sales, Inc. offer acceptable, why did he ask for two weeks' time? We think he did so because he believed it was acceptable, whether the Ruffs said so or not. Accordingly, computing the time from that date, April 20, 1973, to July 16, 1973, the date last extended by the Ruffs and previously requested by the Schmeichels, the Schmeichels had eighty-seven days more or less within which to act. Only when Schmeichels failed to accept the 16th of July as the date for payment did the Ruffs terminate negotiations with Schmeichels. In light of all the circumstances, we think that the time afforded the Schmeichels was reasonable and therefore conclude that they failed to make payment within a reasonable time.

Schmeichels rely upon Kuhn v. Hamilton, 117 N.W.2d 81 (N.D.1962), in support of their position. *Kuhn* was a quiet-title action wherein the landlord and tenant entered into a contract containing an option to purchase the property rented by the tenant. The tenant maintained she had exercised the option to purchase and had thereafter made monthly payments on the purchase price. The landlord contended the option to purchase had never been exercised and that the monthly payments made by the tenant were rental payments rather than purchase-money payments. In *Kuhn* as in the instant case, the lease was silent as to the time and manner of payment, and payment of the full purchase price was not made a condition of the exercise of the option.

We believe the principle set forth in *Kuhn* as embodied in the syllabus is applicable to the instant case. The syllabus reads:

"Where a lease contains a provision giving the lessee an option to purchase the leased premises within a specified time but is silent as to the time of payment of the purchase price, payment or tender of payment is not a condition precedent to the exercise of the option and may be made within a reasonable time after the option has been accepted." Kuhn v. Hamilton, *supra*, 117 N.W.2d 81.

The rule of law set forth in *Kuhn* is applicable, but the case is distinguishable from the instant case on the facts. In *Kuhn* no sale other than the contested one existed, thus no third parties were involved. Further, the tenant made monthly payments for which receipts were given on the purchase price for eight months prior to the landlord's claim that the tenant failed to exercise the option. We said in such circumstances payment of the full purchase price in a lump sum was not a condition of the exercise of the option.

In the instant case, the Ruffs stood to lose the sale to E–Z Sales, Inc., if

Schmeichels could not obtain financing within a reasonable time. In *Kuhn,* the landlord had no sale which he risked losing. Thus, there was not the urgency there that exists in the instant case. The Schmeichels had made no payments to the Ruffs such as the tenant had in *Kuhn.* Further, it was asserted that since the Schmeichels were in their busy season they merely wished to delay things until the season ended and in the hope that E–Z Sales, Inc. would withdraw its offer to purchase. These additional matters, not present in *Kuhn,* must be considered in determining the reasonableness of the time.

The lease grants to the Schmeichels the right of first refusal and goes on to state that if the premises are sold during the term of the lease plus ninety days, the Schmeichels have the right to meet any bona fide offer. Such provisions in the lease when read together would not allow the Schmeichels to delay a decision on meeting a bona fide offer such as E–Z Sales, Inc.'s until the end of the lease plus ninety days. Certainly, if the third-party offer to purchase had been made during the early part of the term instead of the later part of the term of the lease, the Schmeichels would not be justified in delaying the exercise of their right to meet any bona fide offer until the end of the lease term plus ninety days. The response from the Schmeichels in the exercise of their right to meet any bona fide offer must have been made within a reasonable time after they had notice of the offer. The offer to purchase of E–Z Sales, Inc. was presented to Schmeichels on April 20, 1973. Time began to run against the Schmeichels from the time they were shown the offer of E–Z Sales, Inc. Although they met the bona fide offer within a reasonable time, they failed to make payment within a reasonable time.

The essence of the trial court's findings was that the Schmeichels failed to act within a reasonable time.

The actual wording of the findings of the trial court was that the Schmeichels

failed to exercise the option. Although we find that they met the bona fide offer by exercising the option, we sustain the judgments of the trial court for the reasons stated herein.

Accordingly, both judgments are affirmed.

VOGEL, TEIGEN, PAULSON and KNUDSON, JJ., concur.