1999 UT 34

**Rulon J. HARPER, Plaintiff and Appellant,**

v.

**GREAT SALT LAKE COUNCIL, INC., Boy Scouts of America; Mt. Jordan, Ltd; and Geneva Rock Products, Inc. Defendants and Appellees.**

**No. 970601.**

Supreme Court of Utah.

April 9, 1999.

Joseph C. Rust, Salt Lake City, for Harper. Robert J. Dale, Salt Lake City, for Geneva Rock.

David J. Jordan, John S. Kirkham, Kenneth B. Black, Nile W. Eatmon, Salt Lake City, for Great Salt Lake Council.

Bruce L. Dibb, Julian D. Jensen, Salt Lake City, for Mt. Jordan.

STEWART, Justice:

¶1 Plaintiff Rulon J. Harper seeks reversal of a summary judgment against him and in favor of Great Salt Lake Council, Inc., Boy Scouts of America ("BSA"), Mt. Jordan Ltd., and Geneva Rock Products, Inc. The trial

court ruled that Harper's offer to purchase property BSA owned was subject to a right of first refusal in Mt. Jordan and that Mt. Jordan's exercise of that right terminated any interest Harper had in the subject property.

## I. FACTS

¶ 2 The material facts are undisputed. In December 1983, Mt. Jordan donated seventy-one acres in Bluffdale, Utah, to BSA for use as a scout camp (the "Property"). Mt. Jordan retained a right of first refusal to purchase the Property in a document entitled Right of First Refusal (the "First Refusal Agreement"). A decision by BSA to "sell, convey or transfer all or any portion of the property" would trigger Mt. Jordan's right of first refusal. The First Refusal Agreement required BSA to submit to Mt. Jordan written notice of BSA's intent to sell the Property and a copy of any third-party purchase offer that BSA received from a third party, i.e., the Harpers. Section 4 of the First Refusal Agreement provided Mt. Jordan the right to "elect to purchase the Alienated Property upon the same terms and conditions and for the same consideration as are set forth" in the offer. This section also allowed Mt. Jordan sixty days from its receipt of the copy of the offer to exercise its right of first refusal. Failure to exercise the right within this period constituted an election not to purchase. Section 8 of the Agreement, entitled "*Closings*," stated that if Mt. Jordan exercised its right of first refusal, the closing between Mt. Jordan and BSA should occur no later than sixty days after exercise of the right of first refusal. Section 16 of the Agreement, entitled "*Waiver*," allowed either Mt. Jordan or BSA to waive any rights or any conditions to their obligations, or any duty, obligation, or covenant of any other party.

¶ 3 In November 1995, Harper wrote to BSA expressing interest in purchasing the Property. BSA sent Harper a copy of the First Refusal Agreement. In January 1996, Harper submitted to BSA an earnest money sales agreement that expressly incorporated the First Refusal Agreement. Paragraph 7 of the earnest money agreement, entitled "Special Considerations and Contingencies," stated: "[T]he buyer [i.e., Harper] acknowledges that this offer is subject to a First Right of refusal in Jordan Limited partnership [Mt. Jordan], giving said partnership 60 days to purchase on the same terms and conditions herein set forth." BSA signed the offer (as signed, the "Harper Agreement") on February 14. The Harper Agreement specified no closing date.

¶ 4 On February 21, BSA sent a copy of the Harper Agreement to Mt. Jordan. Within sixty days, on April 19, Mt. Jordan gave BSA written notice of its intent to exercise its right of first refusal. Mt. Jordan stated it would purchase the Property "upon the same terms and conditions, and for the same consideration" as the Harper Agreement. BSA then notified Harper of Mt. Jordan's exercise of its right of first refusal and returned to Harper his earnest money and the cost of a survey that Harper incurred. On June 5, Mt. Jordan and BSA executed a real estate purchase contract (the "Purchase Contract") which stated, inter alia, that (1) it superceded all prior agreements between BSA and Mt. Jordan, and (2) the closing would occur on or before July 18, 1996.

¶ 5 On June 27, Harper informed BSA that the closing between Mt. Jordan and BSA had not occurred within sixty days of April 19, the date Mt. Jordan exercised its right of first refusal, and demanded that BSA convey the Property to him pursuant to the Harper Agreement. BSA refused. The closing between BSA and Mt. Jordan occurred July 18, as provided in the Purchase Contract. Immediately thereafter, Mt. Jordan conveyed the Property to Geneva Rock.

¶ 6 Harper filed a complaint against BSA seeking specific performance by BSA of the Harper Agreement. Harper later amended his complaint, adding Mt. Jordan as a defendant and asking the court to void BSA's sale of the Property to Mt. Jordan. Alternatively, Harper requested money damages against BSA, alleging it had breached the Harper Agreement. Subsequently, Harper again amended its complaint, adding Geneva Rock as a defendant and requesting voidance of the sale between Mt. Jordan and Geneva or, alternatively, damages.

¶ 7 Harper moved for summary judgment, claiming Mt. Jordan failed to exercise its right of first refusal because the closing of the sale to Mt. Jordan did not occur within sixty days after Mt. Jordan sent notice of its intent to exercise its right of first refusal. Harper argued that the Harper Agreement precluded BSA and Mt. Jordan from mutually extending the closing date beyond the sixty-day period specified in the First Refusal Agreement. BSA, Mt. Jordan, and Geneva Rock each filed cross-motions for summary judgment. They argued that Mt. Jordan's proper exercise of its right of first refusal terminated the Harper Agreement and that BSA and Mt. Jordan had the right to postpone their closing date without violating the First Refusal Agreement. The trial court granted defendants' motions and denied Harper's.

## II. STANDARD OF REVIEW

¶ 8 In reviewing a summary judgment, we accord no deference to the trial court's determination and review for correctness. *See Glover ex rel. Dyson v. Boy Scouts of America*, 923 P.2d 1383, 1385 (Utah 1996). We review whether the trial court correctly applied the governing law and correctly ruled that there were no disputed issues of material fact.

## III. ANALYSIS

¶ 9 All parties agree that there are no disputed issues of material fact. Harper's principal argument on appeal is that Mt. Jordan violated the First Refusal Agreement's terms by failing to close on the purchase of the Property from BSA within sixty days of Mt. Jordan's exercise of its right of first refusal and that BSA therefore breached the Harper Agreement by selling the Property to Mt. Jordan instead of Harper.

¶ 10 Section 4 of the First Refusal Agreement states what Mt. Jordan must do to exercise its right of first refusal.

[Mt. Jordan] shall have sixty (60) days from and after its receipt of the Written

Agreement and the Transfer Notice *to elect to purchase* the Alienated property upon the same terms and conditions and for the same consideration as are set forth in the Written Agreement. *[Mt. Jordan] may exercise the Right of First Refusal with respect to the Alienated Property by giving written notice thereof to Grantee within such sixty (60) day period* in the manner provided in section 10 hereof. *If Grantor so exercises the Right of First Refusal,* the Closing with respect to the Alienated Property shall be held in the manner provided in Section 8 hereof.

(Emphasis added.) [1]

¶ 11 It is undisputed that Mt. Jordan gave BSA written notice of its intent to exercise its right of first refusal within sixty days. Harper's only argument is that because the BSA/Mt. Jordan closing date was set more than sixty days after the date on which Mt. Jordan exercised its right of first refusal, that right was voided. Significantly, the sixty-day closing was specified only in the First Refusal Agreement between BSA and Mt. Jordan. The Harper Agreement specified no closing date.

¶ 12 After Mt. Jordan received from BSA a copy of the Harper Agreement, Mt. Jordan had sixty days under section 4 of the First Refusal Agreement "to elect to purchase" the Property on the same terms and conditions and for the same consideration set forth in the Harper Agreement. Mt. Jordan could exercise that right "by giving written notice thereof" to BSA "within such sixty (60) day period." Section 4 expressly identified conduct that served as "an election not to purchase," or in other words, a rejection of its right of first refusal, thereby allowing BSA to sell the Property to the proposed purchaser: failure of Mt. Jordan to elect to purchase the Property within sixty days "by giving such notice . . . shall be deemed to be an election not to purchase the Alienated Property." Nothing in the First Refusal Agreement indicates that the failure of BSA and Mt. Jordan to close the sale within the sixty

---

1. Section 10 sets forth the proper methods of providing notices required under the First Refus-

al Agreement and is not at issue in this case.

days constituted a failure by Mt. Jordan to exercise its right of first refusal.

¶ 13 Harper argues that section 8 of the First Refusal Agreement supports his argument that the First Refusal Agreement required Mt. Jordan and BSA to close on sale of the Property within sixty days of Mt. Jordan's exercise of its right of first refusal in order to supercede the Harper Agreement. Section 4 states that if Mt. Jordan exercises the right of first refusal, closing must occur in accordance with section 8, which states that "[i]n the event [Mt. Jordan] exercises the Right of First Refusal, closing of the purchase and sale of the Alienated Property ... shall not occur later than sixty (60) days after the exercise by [Mt. Jordan] of the Right of First Refusal." However, section 4 treats the exercise of the right of first refusal and timely closing as separate and independent provisions. The requirement that Mt. Jordan close on its purchase of the Property within sixty days of delivering its notice of intent to exercise its right of first refusal was not, therefore, a term or condition that Mt. Jordan had to meet to properly exercise its right of first refusal under section 4. Moreover, the section 8 requirement that Mt. Jordan and BSA close within sixty days of notice of intent to exercise the right of first refusal was a condition that the parties could mutually agree to modify or that BSA could waive under section 16 of the First Refusal Agreement.

¶ 14 Any interest Harper may have had in the Property was limited to obligations BSA assumed in the Harper Agreement alone. The right of first refusal, when exercised, extinguished Harper's rights under the Harper Agreement. An earnest money agreement, like the Harper Agreement, is a legally binding executory contract for sale of realty. *See, e.g., Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597, 599 (1962); *Ciet v. Kaufman,* 902 P.2d 153, 155 (Utah Ct.App. 1995). However, the Harper Agreement was not enforceable in the event Mt. Jordan exercised its right of first refusal, and Mt Jordan's exercise of this right terminated any duty BSA had under their agreement to sell the Property to Harper. When BSA signed the Harper Agreement, that agreement became a contract subject to a condition precedent; namely, that Mt. Jordan not exercise its right of first refusal. Under well-established principles of contract interpretation, where the duty of the obligor to perform is contingent upon the occurrence or existence of a condition precedent, the obligee may not require performance by the obligor, because the obligor's duty, and conversely the obligee's right to demand performance, does not arise until that condition occurs or exists. *See* 3A Arthur L. Corbin, *Corbin on Contracts* § 628, at 16 (1960). Failure of a material condition precedent relieves the obligor of any duty to perform. *See id.* § 630, at 20–21.

¶ 15 BSA's duty to perform and Harper's concomitant right to demand performance were contingent upon the condition that Mt. Jordan fail to exercise its right of first refusal. Before Harper tendered his offer, BSA provided him a copy of the First Refusal Agreement, giving him notice of Mt. Jordan's right of first refusal. The Harper Agreement incorporated Mt. Jordan's right of first refusal in paragraph 7, which states: "The buyer acknowledges that this offer is subject to a First Right of refusal in Jordan Limited partnership, giving said partnership 60 days to purchase on the same terms and conditions herein set forth." Mt. Jordan's exercise of its right of first refusal terminated any obligation BSA had to perform under the Harper Agreement.

¶ 16 Harper next argues that Mt. Jordan failed to conform to the requirement in the First Refusal Agreement that its purchase of the Property from BSA be "upon the same terms and conditions, and for the same consideration as set forth in the [Harper Agreement]." However, that condition was also one that the parties to the First Refusal Agreement could mutually agree to modify or that BSA could unilaterally waive under section 16.

¶ 17 Harper also argues that we should interpret the First Refusal Agreement in conjunction with the Harper Agreement. He contends doing so is proper because both instruments establish what Mt. Jordan must do to exercise its right of first

refusal, both govern transfer of the Property, and both involved BSA as a party. When read together, Harper contends, the instruments require that Mt. Jordan both provide notice and close on the sale of the Property within sixty days of receiving a copy of the Harper Agreement from BSA. Harper relies on section 7 of the Harper Agreement, quoted above, which incorporates the terms of the First Refusal Agreement.

¶ 18 Harper cites *Hofmann v. Sullivan*, 599 P.2d 505 (Utah 1979), for the proposition that when two instruments govern transfer of the same land, and one instrument incorporates the other, they should be construed together in a way that "make[s] sense" rather than inconsistently. *Id.* at 507. However, in *Hofmann*, the second instrument was merely an incomplete copy of the first, and the parties to both instruments were identical. Harper cites no authority suggesting that a court should construe together two instruments governing transfer of the same property where the instruments share only one common party. On the contrary, "[t]he general rule is that one contract will not merge into another unless it is plainly shown that was the intent of the parties ... but not so unless the two contracts are between the same parties." *Foote v. Taylor*, 635 P.2d 46, 48 (Utah 1981).

¶ 19 Harper also argues that because both the Harper Agreement and the First Refusal Agreement govern the sale of the same parcel of land, the Harper Agreement incorporates the terms of the First Refusal Agreement, and BSA was a party to both instruments, he thereby received a vested contingent interest in the Property. He contends this interest precluded BSA and Mt. Jordan from modifying the terms of the First Refusal Agreement pertaining to closing without his consent.

■■■ ¶ 20 Harper has no standing to object to BSA and Mt. Jordan's modification of a term of the First Refusal Agreement because he had no cognizable interest in that agreement. Harper had no interest in the

First Refusal Agreement because he was not a party to it, nor was he a third-party beneficiary thereof. Third-party beneficiaries are those " 'recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.' " *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 506 (Utah 1980) (quoting 4 Corbin, *supra* § 774, at 6). BSA and Mt. Jordan cannot be said to have conferred a separate and distinct benefit on a third-party offeror under the First Refusal Agreement. *See American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1188 (Utah 1996); *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 536 (Utah 1993). On the contrary, the First Refusal Agreement operated to defeat Harper's rights as a third-party offeror.[2]

¶ 21 Affirmed.

¶ 22 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Justice STEWART's opinion.

■■■

---

**2.** Because Harper lacks standing with respect to the First Refusal Agreement, we do not consider his argument that this agreement, as interpreted by its parties, violates the rule against perpetui-

ties. In any case, Harper cannot appeal this issue as he failed to preserve it below. *See Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996).