2003 ND 52

**Kathryn SKJERVEM, Plaintiff and Appellant,**

v.

**MINOT STATE UNIVERSITY, Defendant and Appellee.**

No. 20020236.

Supreme Court of North Dakota.

March 31, 2003.

Rehearing Denied April 21, 2003.

James E. Nostdahl, Pringle & Herigstad, P.C., Minot, ND, for plaintiff and appellant.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Kathryn Skjervem appeals from a summary judgment dismissing her personal injury claim against Minot State University. We affirm, concluding Skjervem failed to raise a genuine issue of material fact precluding summary judgment.

## I

[¶ 2] Kathryn Skjervem was a student at Minot State University ("MSU") in the fall of 1998. She lived in an apartment building owned by, and located on the campus of, MSU. On November 19, 1998, Skjervem injured her back when she fell on ice which had accumulated on the sidewalk outside the apartment building.

[¶ 3] Skjervem commenced this action against MSU on June 16, 2000, alleging MSU had caused her injuries by failing to properly maintain its property and allowing ice to accumulate on the sidewalk. The district court granted MSU's motion for summary judgment, holding that MSU had immunity for any design defect on its property under N.D.C.C. § 32–12.2–02(3)(b) and that there was no evidence MSU had been negligent in maintaining the sidewalk. Skjervem has appealed from the summary judgment dismissing her claim against MSU.

## II

[¶ 4] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. *Hilton v. North Dakota Educ. Ass'n,* 2002 ND 209, ¶ 23, 655 N.W.2d 60. The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that, under applicable principles of substantive law, he is entitled to judgment as a matter of law. *Moen v. Thomas,* 2001 ND 110, ¶ 10, 628 N.W.2d 325. In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Id.*

[¶ 5] We have outlined the duty of a party opposing a motion for summary judgment:

Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent

admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991)).

[¶ 6] Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Hilton*, 2002 ND 209, ¶ 23, 655 N.W.2d 60. When no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Township*, 2002 ND 140, ¶ 23, 651 N.W.2d 625.

[¶ 7] Whether the trial court properly granted summary judgment is a question of law which we review de novo on the entire record. *Wahl v. Country Mut. Ins. Co.*, 2002 ND 42, ¶ 6, 640 N.W.2d 689.

## III

[¶ 8] Before addressing Skjervem's arguments on appeal, it is helpful to delineate what Skjervem is *not* arguing on appeal.

[¶ 9] Skjervem does not rely upon N.D.C.C. § 32–12.2–02(3)(f), which provides that the State is immune from:

A claim resulting from snow or ice conditions, water, or debris on a highway or on a public sidewalk that does not abut a state-owned building or parking lot, except when the condition is affirmatively caused by the negligent act of a state employee.

Skjervem does not argue the icy condition was affirmatively caused by a state employee's negligence under this statute, nor does she argue that the statute by implication creates liability for the State for icy conditions upon a sidewalk which *does* abut a state-owned building or parking lot. Skjervem expressly disclaims any reliance upon N.D.C.C. § 32–12.2–02(3)(f), and accordingly we will not address it.

[¶ 10] The district court concluded MSU was not negligent as a matter of law for failing to clear ice and snow from the sidewalk before Skjervem's fall. The record shows Minot had received ten inches of snow on November 18, 1998, the day before her fall. Skjervem concedes MSU had cleared the snow from the sidewalk, and the sidewalk was clear and not slippery when Skjervem returned to her apartment from class at 3:00 P.M. on November 19. Skjervem's fall occurred at approximately 4:45 P.M. as she was leaving to pick up her daughter from daycare. The district court concluded as a matter of law that MSU's failure to clear any ice or snow which had accumulated in the one-hour-and-forty-five-minute interval was not negligence. Skjervem does not challenge that conclusion, and expressly indicates that she has never argued for liabili-

ty based upon MSU's failure to clear the sidewalk.

## IV

[¶ 11] Skjervem argues MSU was negligent in maintaining its sidewalk because it did not attempt to correct a known hazardous condition.

█ [¶ 12] MSU is part of the state higher education system. N.D. Const. art. VIII, § 6; N.D.C.C. §§ 15–10–01, 15–13–01. As such, MSU is an arm of the State and any claim against it is governed by N.D.C.C. ch. 32–12.2. *See Cooke v. University of North Dakota*, 1999 ND 238, ¶¶ 7–9, 603 N.W.2d 504; *Olson v. University of North Dakota*, 488 N.W.2d 386, 387 (N.D. 1992); *Leadbetter v. Rose*, 467 N.W.2d 431, 434 (N.D.1991), *overruled on other grounds by Bulman v. Hulstrand Constr. Co.*, 521 N.W.2d 632 (N.D.1994). Under N.D.C.C. § 32–12.2–02(1), "[t]he state may only be held liable for . . . an injury caused from some condition or use of tangible property under circumstances in which the state, if a private person, would be liable to the claimant." This general liability for conditions upon property is limited by N.D.C.C. § 32–12.2–02(3)(b), which provides:

> 3. Neither the state nor a state employee may be held liable under this chapter for any of the following claims:
>
> . . . .
>
> b. A claim based upon a decision to exercise or perform or a failure to exercise or perform a discretionary function or duty on the part of the state or its employees. . . . Discretionary acts include acts, errors, or omissions in the design of any public project but do not include the drafting of plans and specifications that are provided to a contractor to construct a public project.

The district court concluded that it was the design of the building and surrounding landscaping which caused water to melt from the roof of the building, flow along the landscaping, and pool and freeze on the sidewalk. The court concluded this was a design defect under the statute and that MSU was therefore immune from liability.

[¶ 13] Skjervem argues that, although it was the design of the building and landscaping which caused the water to pool and freeze on the sidewalk, she is not alleging liability based upon MSU's original design and construction of the building. Rather, she argues that MSU was negligent in *maintaining* its property when it had knowledge of the hazardous condition and did not correct it.

[¶ 14] Courts in other jurisdictions faced with similar circumstances have generally concluded that the state's immunity for design defects does not insulate the state in perpetuity, but the state may be liable if it has knowledge that it has created a hazardous condition and does not take reasonable measures to alleviate the danger. *See Baldwin v. State*, 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121, 1127, 1130–31 (1972); *City of St. Petersburg v. Collom*, 419 So.2d 1082, 1086 (Fla.1982); *Dunn v. Unified Sch. Dist. No. 367*, 40 P.3d 315, 325 (Kan.Ct.App.2002); *Archon v. Union Pac. R.R.*, 657 So.2d 987, 995–96 (La.1995); *Wooten v. South Carolina Dep't of Transp.*, 326 S.C. 516, 485 S.E.2d 119, 123 (1997); 18 Eugene McQuillin, Law of Municipal Corporations § 53.04.20 (2003). *But see Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111, 123 (1983); *Manna v. State*, 129 N.J. 341, 609 A.2d 757, 762–64 (1992).

[¶ 15] The general rule is outlined in 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 299 (2001):

The immunity afforded to a public entity by a statute regarding the design of public improvements is not perpetual. On the contrary, if the defendant public entity has actual or constructive notice that the original plan or design had changed and, as a result of such change, produced a dangerous condition of the entity's property, the entity must then take reasonable action to correct the condition.

In a seminal case addressing the issue, the Supreme Court of California stated:

The crucial question confronting us, therefore, is whether the immunity granted by section 830.6 continues to shield a public entity from liability even where, as here, the actual operation of the plan or design over a period of time and under changed circumstances discloses that the design has created a dangerous condition of which the entity has notice.

. . . .

Essentially we must inquire as to whether the Legislature, in providing that design could give birth to immunity, intended that it could also endow immunity with perpetual life. . . .

. . . .

The clear teaching of *Weiss [v. Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960) ] is that design immunity persists only so long as conditions have not changed. Having approved the plan or design, the governmental entity may not, ostrich-like, hide its head in the blueprints, blithely ignoring the actual operation of the plan. Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard. Since the Legislature explicitly adopted the rule of *Weiss,* we conclude that it did not intend that the design immunity provided by section 830.6 would be perpetual.

*Baldwin,* 99 Cal.Rptr. 145, 491 P.2d at 1125–27 (citation and footnote omitted). The court concluded:

To recapitulate, we hold that where a plan or design of a construction of, or improvement to, public property, although shown to have been reasonably approved in advance or prepared in conformity with standards previously so approved, as being safe, nevertheless in its actual operation under changed physical conditions produces a dangerous condition of public property and causes injury, the public entity does not retain the statutory immunity from liability conferred on it by section 830.6.

*Baldwin,* at 1130–31.

[¶ 16] The Supreme Court of Florida explained the rationale for the rule in *Collom,* 419 So.2d at 1086 (citation and footnote omitted):

[O]nce a governmental entity creates a *known* dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity *has knowledge* of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger. The failure of government to act in this type of circumstance is, in our view, a failure at the operational level. We find that a governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the grounds that it arose from a judgmental, planning-level decision. When such a condition is knowingly created by a governmental entity, then it reasonably follows that the governmental entity has the respon-

sibility to protect the public from that condition, and the failure to so protect cannot logically be labeled a judgmental, planning-level decision. We find it unreasonable to presume that a governmental entity, as a matter of policy in making a judgmental, planning-level decision, would knowingly create a trap or a dangerous condition and intentionally fail to warn or protect the users of that improvement from the risk. In our opinion, it is only logical and reasonable to treat the failure to warn or correct a known danger created by government as negligence at the operational level.

[¶ 17] We find it unnecessary to decide whether we would follow these cases and hold the State liable for known dangerous conditions because we conclude that, even if we were to adopt the rule, Skjervem has failed to raise a genuine issue of material fact on an essential element of her claim under the rule. The cases holding that design defect immunity is not perpetual clearly require that the State may only be held liable for *known* hazardous conditions upon its property. In her brief and in response to questions at oral argument, the only evidence cited by Skjervem to support her assertion that MSU had knowledge of the alleged dangerous condition was evidence that the apartment building had been there for a long time. There was also evidence that *subsequent* to Skjervem's fall she and her fiancé noticed ice on the sidewalk on other occasions.

[¶ 18] These bare, conclusory allegations are insufficient to raise a genuine issue of material fact. Allegations that the condition recurred after the date of Skjervem's injury is not evidence that it had been regularly occurring prior to Skjervem's injury. Nor does the mere fact that the building had been in existence for a number of years support an inference that

water had pooled and frozen on the sidewalk on prior occasions. Erosion, changed soil conditions, shifting or sinking of the sidewalk, or variation of the landscaping could have caused water to pool and freeze where it had not done so before. Skjervem has failed to draw our attention to competent, admissible evidence in the record raising an inference that MSU had prior knowledge that water was pooling and freezing on the sidewalk, causing a hazardous condition. When no pertinent evidence on an essential element of a party's claim is presented in resistance to a motion for summary judgment, it must be presumed no such evidence exists. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Township*, 2002 ND 140, ¶ 23, 651 N.W.2d 625.

[¶ 19] We conclude Skjervem has failed to raise a genuine issue of material fact precluding summary judgment. We therefore affirm the summary judgment dismissing Skjervem's claim.

[¶ 20] GERALD W. VANDEWALLE, C.J., DONOVAN J. FOUGHTY, D.J., MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ.

[¶ 21] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of SANDSTROM, J., disqualified.