2003 ND 91

**NORTHERN PLAINS ALLIANCE, L.L.C., Plaintiff and Appellant,**

v.

**Lee Roy J. MITZEL, and J & L Development, Inc., Defendants and Appellees.**

**No. 20020324.**

Supreme Court of North Dakota.

June 6, 2003.

B. Timothy Durick, Pearce & Durick, Bismarck, N.D., for plaintiff and appellant.

David S. Maring (argued) and Anthony J. Weiler (on brief), Maring Williams Law Office, Bismarck, N.D., for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Northern Plains Alliance, L.L.C. ("Northern") appealed from a summary judgment dismissing its action against Lee Roy Mitzel and J & L Development, Inc. ("J & L") for intentional interference with contract. We affirm.

I

[¶ 2] Lee Roy and Barbara Mitzel were divorced in 1996. The divorce decree gave Lee Roy a right of first refusal to purchase certain real estate that Barbara received in the divorce, including a commercial building known as Tuscany Square. Tuscany Square was located on property owned by the Burlington Northern Railroad ("BN"), and Barbara had a long-term lease on the property from BN.

[¶ 3] Under the terms of the parties' divorce decree, Barbara was required to give Lee Roy notice if she received an acceptable offer from a third party to pur-

chase any of the real estate. Lee Roy then had seven days to notify Barbara in writing whether he would exercise or waive the right of first refusal. If he exercised the right, Lee Roy agreed to purchase the property on the same terms as the offer Barbara had received from the third party.

[¶ 4] By a written agreement dated January 10, 2002, Northern agreed to purchase Tuscany Square from Barbara for $1.5 million. The agreement set a closing date of March 10, 2002. The agreement specifically stated it was subject to Lee Roy's right of first refusal, and was also contingent on Northern successfully negotiating a purchase of the underlying land from BN.

[¶ 5] Barbara promptly notified Lee Roy of Northern's offer to purchase Tuscany Square. On January 14, 2002, Lee Roy notified Barbara in writing that he was exercising his right to purchase the property under the right of first refusal.

[¶ 6] In January and February 2002, J & L, a corporation of which Lee Roy owned fifty percent, negotiated with BN to purchase the underlying land. J & L and BN finalized a purchase agreement for the land on February 26, 2002, but closing on the property did not take place until March 22, 2002. On April 5, 2002, the closing on the Tuscany Square sale occurred and Barbara transferred the property to J & L.[1]

[¶ 7] Northern then brought this action against Lee Roy and J & L, claiming intentional interference with contract. Northern alleges that by failing to close the sale of Tuscany Square on March 10, 2002, and negotiating purchase of the underlying land from BN, Lee Roy and J & L caused Barbara to breach her agreement to sell Tuscany Square to Northern. Lee Roy and J & L answered and moved for summary judgment. The trial court concluded that, once Lee Roy exercised his right of first refusal, all rights Northern had under its January 10, 2002, purchase agreement with Barbara were extinguished and Northern had no standing to challenge the subsequent actions of Lee Roy and J & L in performance of their agreement with Barbara. This appeal is from the summary judgment entered dismissing Northern's complaint.

II

[¶ 8] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or if resolving the factual disputes will not alter the result. *Skjervem v. Minot State Univ.*, 2003 ND 52, ¶ 4, 658 N.W.2d 750. The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that, under applicable principles of substantive law, she is entitled to judgment as a matter of law. *Id.* The evidence must be viewed in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Id.* Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Id.* at ¶ 6. Whether the district court properly granted summary judgment is a question of law which

---

1. Northern has not alleged that the sale to J & L, Lee Roy's corporation, rather than to Lee Roy individually affected the validity of the exercise of the right of first refusal.

we review de novo on the entire record. *Id.* at ¶ 7.

## III

[¶ 9] Northern alleges the trial court erred in granting summary judgment dismissing its claim for interference with contract. To establish a prima facie case of intentional interference with contract, a plaintiff must prove "(1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." *Hilton v. North Dakota Educ. Ass'n,* 2002 ND 209, ¶ 24, 655 N.W.2d 60. Thus, in order to defeat summary judgment, Northern was required to establish material questions of fact on whether it had a contract with Barbara, whether that contract was breached, and whether Lee Roy and J & L instigated that breach without justification.

[¶ 10] The missing element in this case is a breach of the contract between Northern and Barbara. Unless Barbara had a contractual obligation to sell the property to Northern after Lee Roy notified her he would purchase the property but did not complete the purchase by the March 10, 2002, closing date, there was no breach.

[¶ 11] When parties enter into an agreement for the sale of property which is expressly subject to a right of first refusal by a third party, the contract is conditional and becomes binding on the seller only if the right of first refusal is not exercised. *Houtchens v. United Bank of Colorado Springs, N.A.,* 797 P.2d 814, 815 (Colo.Ct.App.1990); *Harper v. Great Salt Lake Council, Inc.,* 976 P.2d 1213, 1217 (Utah 1999). The moment the right of first refusal is exercised, the contract between the original buyer and seller is no longer in effect. *Houtchens,* at 815; *Harper,* at 1217.

[¶ 12] The rule is fully explained in *Harper,* in which Harper had entered into a written agreement to purchase land from BSA. The agreement specifically noted it was subject to a right of first refusal on the property by Mt. Jordan. The court held any rights Harper held under its purchase agreement were terminated when Mt. Jordan exercised its right of first refusal:

The right of first refusal, when exercised, extinguished Harper's rights under the Harper Agreement. An earnest money agreement, like the Harper Agreement, is a legally binding executory contract for sale of realty. However, the Harper Agreement was not enforceable in the event Mt. Jordan exercised its right of first refusal, and Mt Jordan's exercise of this right terminated any duty BSA had under their agreement to sell the Property to Harper. When BSA signed the Harper Agreement, that agreement became a contract subject to a condition precedent; namely, that Mt. Jordan not exercise its right of first refusal. Under well-established principles of contract interpretation, where the duty of the obligor to perform is contingent upon the occurrence or existence of a condition precedent, the obligee may not require performance by the obligor, because the obligor's duty, and conversely the obligee's right to demand performance, does not arise until that condition occurs or exists. Failure of a material condition precedent relieves the obligor of any duty to perform.

BSA's duty to perform and Harper's concomitant right to demand performance were contingent upon the condition that Mt. Jordan fail to exercise its right of first refusal. Before Harper tendered his offer, BSA provided him a copy of the First Refusal Agreement, giving him notice of Mt. Jordan's right of first refusal. The Harper Agreement

incorporated Mt. Jordan's right of first refusal in paragraph 7, which states: "The buyer acknowledges that this offer is subject to a First Right of refusal in Jordan Limited partnership, giving said partnership 60 days to purchase on the same terms and conditions herein set forth." Mt. Jordan's exercise of its right of first refusal terminated any obligation BSA had to perform under the Harper Agreement.

*Harper*, 976 P.2d at 1217 (citations omitted). The court further concluded that, once the right of first refusal was exercised, BSA and Mt. Jordan were free to modify the terms of their agreement, including the closing date, and Harper had no standing to object. *Id.* at 1218.

[¶ 13] Accordingly, if Lee Roy properly exercised his right of first refusal, the condition precedent for Northern's agreement with Barbara did not occur, Northern's agreement with Barbara was extinguished, and there was no breach of that agreement when Barbara failed to sell the property to Northern. Northern contends, however, that Lee Roy never properly exercised the right of first refusal because he failed to close on the property by March 10, 2002.

[¶ 14] Resolution of this issue requires an explanation of the nature of a right of first refusal and the distinction between exercise of the right and performance of the resulting contract. We have noted that a right of first refusal is often referred to as a "preemptive right" because it allows the holder to preempt a sale to an interested third party, and requires the landowner to offer the property to the right holder on the same terms. *Anderson v. Heinze*, 2002 ND 60, ¶ 2 n. 1, 643 N.W.2d 24; *Berry–Iverson Co. v. Johnson*, 242 N.W.2d 126, 129–30 (N.D. 1976); *see also* 3 Eric Mills Holmes, Corbin on Contracts § 11.3 (rev. ed.1996).

Once the landowner receives and accepts an offer from a third party, the right of first refusal ripens into an option to purchase which may be exercised like any other option contract:

The holder of a right of first refusal on a piece of land only has the right to receive an offer to buy the land. Generally, it is a contractual right to preempt another because the right is conditional on the owner's decision that an offer from a third party is acceptable. More specifically, the right is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it. Only then can the holder of the right decide whether or not to create a contract on the same terms that the owner is willing to accept from the third party. More precisely, the occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which "triggers" the right of first refusal that "ripens" into an option. The option then can be exercised like any other option contract.

3 Holmes, *supra,* § 11.3 (footnotes omitted); *see also* 1 Emily S. Bernheim, Tiffany on Real Property § 310b (3rd ed. Supp.2002); 1 E. Allen Farnsworth, Contracts § 3.23a (1998); 77 Am.Jur.2d *Vendor and Purchaser* § 40 (1997).

[¶ 15] Accordingly, when Barbara notified Lee Roy that she had entered into an agreement to sell Tuscany Square to Northern, Lee Roy's right of first refusal ripened into an enforceable option to purchase the property on the same terms. Northern argues that, to exercise this option, Lee Roy had to do more than merely notify Barbara in writing that he was exercising the option, but had to additionally follow through and make full payment by the March 10, 2002, closing date. North-

ern is confusing exercise of the option with performance of the resulting executory contract for sale of the property.

[¶ 16] Acceptance of an option for the sale of land within the time allowed and according to its terms converts the option into a binding executory contract of sale. *Horgan v. Russell,* 24 N.D. 490, 498, 140 N.W. 99, 102 (1913). Acceptance of the option, which results in a contract of purchase, and the performance of the resulting contract itself are distinct. *Northwestern Bell Tel. Co. v. Cowger,* 303 N.W.2d 791, 795 (N.D.1981); *Kuhn v. Hamilton,* 117 N.W.2d 81, 83 (N.D.1962). As we have noted, "[w]here the exercise of the option to purchase does not provide for payment of the purchase price coincident with the optionee's exercise of the option, the payment of the purchase price is merely an incident of performance of the bilateral contract created by the exercise of the option." *Matrix Props. Corp. v. TAG Invs.,* 2000 ND 88, ¶ 17, 609 N.W.2d 737 (quoting *Cowger,* at 795).

[¶ 17] The right of first refusal contained in Barbara and Lee Roy's divorce decree provided that, in the event Barbara received a bona fide offer to purchase the property, she was to deliver a copy to Lee Roy. The decree then provides:

Lee Roy will have seven days from receipt of the original purchase agreement to either sign a waiver of his right of first refusal or give written notification to Barbara that he will purchase the property at the same price. If Lee Roy fails to either sign a waiver or give written notification of purchase at the expiration of the seven days from receipt of notice, his right of first refusal will terminate as to that purchase agreement.

[¶ 18] Northern argues the following additional provision indicates that Lee Roy must pay the full purchase price before the right of first refusal is exercised:

If Lee Roy decides to purchase the property with his written notification of purchase he will pay an identical amount of earnest money as provided in the purchase agreement and will have the same amount of time as provided the purchaser in the purchase agreement to pay the remaining purchase price.

[¶ 19] We construe these provisions to clearly and unambiguously give Lee Roy the right to exercise his right of first refusal by giving written notification within seven days that he will purchase the property at the same price. We do not construe the latter provision governing payment terms to engraft an additional requirement for exercise of the right of first refusal. Rather, that provision merely clarifies that Lee Roy must pay earnest money and will have the same amount of time as the other purchaser to perform under the contract.

[¶ 20] Northern contends *Ruff v. Schmeichel,* 219 N.W.2d 823 (N.D.1974), is dispositive and requires the conclusion that merely sending written notification of exercise of the option is not enough. In *Ruff,* Ruff entered into a written agreement to sell property to E–Z Sales, subject to the Schmeichels' right of first refusal. The Schmeichels, who were leasing the property and in possession, notified Ruff in writing they were exercising their right of first refusal. The Schmeichels had difficulty obtaining financing and requested extensions from Ruff. Ultimately Ruff refused to grant further extensions and sued the Schmeichels for damages for forcible detainer. The Schmeichels brought a separate action against Ruff for specific performance. This Court affirmed a judgment dismissing the Schmeichels' action against Ruff for specific performance and

awarding damages to Ruff in his action against the Schmeichels for forcible detainer.

[¶ 21] Northern contends *Ruff* held that sending written notice is not enough to exercise a right of first refusal, and that payment of the purchase price is required to properly exercise the right. Northern has misread the holding in *Ruff*. This Court rejected the trial court's finding that the Schmeichels had failed to exercise the option, and specifically concluded that they had met the bona fide offer by exercising the option. *Ruff*, 219 N.W.2d at 829. This Court further concluded that, when the Schmeichels failed to perform the resulting contract by failing to pay the purchase price within a reasonable time, Ruff was no longer bound and was entitled to possession of the property. *See id.* at 828–29. *Ruff* does not support Northern's position.

[¶ 22] Lee Roy validly exercised his right of first refusal when he gave Barbara timely written notice he would purchase the property, and a binding executory contract for sale was thereby created. At that moment, because Lee Roy did exercise his option, the condition precedent for Northern's contract with Barbara failed and the purchase agreement between them was extinguished. Barbara therefore had no further obligation under the contract to Northern, and there was no breach when she subsequently failed to sell the property to Northern when Lee Roy missed the March 10, 2002, closing date.

[¶ 23] Because there was no breach, an essential element of Northern's intentional interference with contract claim is missing and summary judgment was appropriate.

## IV

[¶ 24] We have considered Northern's remaining issues and arguments and find them to be without merit. The summary judgment dismissing Northern's complaint is affirmed.

[¶ 25] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., and LAWRENCE A. LECLERC, D.J., concur.

[¶ 26] The Honorable LAWRENCE A. LECLERC, D.J., sitting in place of MARING, J., disqualified.