2002 ND 209

Dale HILTON, Plaintiff and Appellant,

v.

NORTH DAKOTA EDUCATION ASSOCIATION; Claudia Albers, Michael Barnhart, Bart Brackin, Julie Curren, Wade Curren, Tim Erhardt, Janet Fagerland, Harold Fass, Lynette Fitterer, Judy Fryslie, Fayette Harrison, Jane Jacobson, Remae Kuehn, Milissa Meckle, Chad Rolandson, Duane Schmidt, Carole Sherwin, Dave Sherwin, Walter Wolf, and Kiley Yates, individually and collectively as the Center Education Association, Defendants and Appellees.

and

Center Public School District No. 18, Defendant.

No. 20020054.

Supreme Court of North Dakota.

Dec. 20, 2002.

Steven L. Latham (argued), Wheeler Wolf, Bismarck, N.D. and Clifton Rodenburg (on brief), Johnson, Rodenburg & Lauinger, Fargo, N.D., for plaintiff and appellant.

Michael Geiermann, Rolfson Schulz Lervick & Geiermann Law Offices, Bismarck, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1]  Dale Hilton appealed from a judgment dismissing his action against the North Dakota Education Association ("N.D.E.A."), the Center Education Association ("C.E.A."), and the twenty individual members of the C.E.A. for breach of a duty of fair representation, intentional interference with contract, intentional infliction of emotional distress, and negligent infliction of emotional distress.  We hold Hilton was a teacher and was bound by a negotiated agreement between the C.E.A. and the Center School District ("School District").  We affirm.

I

[¶ 2]  The C.E.A. is affiliated with the N.D.E.A., and at all times relevant to this action, the School District recognized the C.E.A. as the exclusive appropriate negotiating unit under N.D.C.C. ch. 15–38.1 for "all certificated teaching personnel · employed, or to be employed by the [School District] (except Superintendent, Principals and Aids)."  The C.E.A. and the School District had reached a negotiated agreement for the 1998–1999 school year for all certificated teaching personnel.  In 1998, the School District hired Hilton as a counselor for two days per week for the 1998–1999 school year.  Hilton was certified under N.D.C.C. ch. 15–36, and he had several degrees, including a Ph.D. in counseling.  Hilton separately negotiated his contract with the School District, and his salary was higher than the negotiated agreement for the School District's certificated teaching personnel.

[¶ 3]  In 1999, the C.E.A. petitioned to be recognized as the appropriate negotiating unit for all certificated teaching personnel employed, or to be employed by the School District.  Hilton did not sign the C.E.A. petition.  The School District recognized the C.E.A. as the exclusive appropriate negotiating unit for all certificated teaching personnel, and the C.E.A. and the School District ultimately reached a negotiated agreement for the 1999–2000 school year.  The School District tendered Hilton

a contract for three days per week with a per day salary less than his salary for the previous year. Hilton submitted a counteroffer with the same per day salary as the previous year. During this process, the School District learned its tendered salary and Hilton's counteroffer did not comply with the negotiated agreement. The School District asked the C.E.A. to reopen negotiations for Hilton, but the C.E.A. declined. In September 1999, Hilton accepted the School District's contract for the 1999–2000 school year for three days per week at a per day salary equal to his salary for the previous year. As a result, Hilton's salary for the 1999–2000 school year did not comply with the negotiated agreement.

[¶ 4] In October 1999, the C.E.A. filed a mandamus action against the School District, seeking to require it to issue Hilton a contract within the parameters of the negotiated agreement. Hilton was not named as a party in the mandamus action. The C.E.A. and the School District settled the mandamus action, agreeing the School District would nonrenew Hilton's contract for the 2000–2001 school year and offer him a contract within the parameters of the negotiated agreement for that year. The settlement agreement between the C.E.A. and the School District did not affect Hilton's salary for the 1999–2000 school year.

[¶ 5] In the spring of 2000, the School District sent Hilton a notice of nonrenewal. Hilton did not request a hearing or formally object to the nonrenewal. Instead, he found another job and sued the N.D.E.A., the C.E.A., and the twenty individual members of the C.E.A. for (1) breach of a duty of fair representation, (2) intentional interference with contract, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. Hilton moved to amend his complaint to seek punitive damages. The N.D.E.A., the C.E.A., and the twenty individual defendants moved for summary judgment.

[¶ 6] The trial court denied their motion for summary judgment on Hilton's claim for breach of a duty of fair representation, concluding Hilton was part of the C.E.A. negotiating unit and there were disputed issues of fact about whether the C.E.A. breached its duty of fair representation to him. The court also concluded there were disputed issues of fact regarding Hilton's claim for negligent infliction of emotional distress. However, the court granted summary judgment dismissal of Hilton's claim for intentional interference with contract, concluding the C.E.A. was the appropriate negotiating unit for all the School District's certificated teachers under N.D.C.C. ch. 15-38.1, and Hilton was subject to the negotiated agreement and had no authority to separately negotiate with the School District. The court also granted summary judgment dismissal of Hilton's claim for intentional infliction of emotional distress, concluding there was no evidence the N.D.E.A. or the C.E.A. intentionally meant to harm Hilton. The court dismissed Hilton's claims against the twenty individual defendants, concluding the C.E.A. was the appropriate negotiating unit for the School District's certificated teaching personnel and the individuals were not authorized to separately bargain once the School District recognized the C.E.A. as the appropriate negotiating unit. The court also denied Hilton's motion to amend his complaint to seek punitive damages.

[¶ 7] After a bench trial, the court dismissed Hilton's claims for breach of a duty of fair representation and for negligent infliction of emotional distress. The court found the C.E.A.'s mandamus action sought to align Hilton's contract with the negotiated agreement, Hilton knew he was

governed by the negotiated agreement, and the C.E.A. and the N.D.E.A. did not breach their duty of fair representation to him. The court also dismissed Hilton's claims for negligent infliction of emotional distress. Hilton appealed.

## II

### A

[¶ 8] Hilton argues the trial court erred in deciding, as a matter of law, he was a member of the C.E.A. negotiating unit. Hilton argues his counselor job did not involve classroom teaching, and he was not a "teacher" as defined by N.D.C.C. § 15-38.1-02(6). He therefore argues he was not part of the "appropriate negotiating unit" for teachers, as defined by N.D.C.C. § 15-38.1-02(3), and he was not bound by the negotiated agreement between the C.E.A. and the School District.

[¶ 9] During the relevant time, contract negotiations between teachers and school districts were governed by N.D.C.C. ch. 15-38.1.[1] Under N.D.C.C. § 15-38.1-08, "representative organizations" were authorized to represent an "appropriate negotiating unit" in matters of employee relations with a school board. Section 15-38.1-02(4), N.D.C.C., defined a "representative organization" as any organization authorized by an "appropriate negotiating unit" to represent the members of the unit in negotiations with a school board, and N.D.C.C. § 15-38.1-02(3) defined an "appropriate negotiating unit" as a group of teachers having common interests, common problems, a common employer, or a history of common representation, which warranted representation by a single representative organization in negotiations with a school board. Section 15-38.1-

02(6), N.D.C.C., said " 'teachers' means and includes all public school employees certificated under chapter 15-36 and employed primarily as classroom teachers." Chapter 15-38.1, N.D.C.C. also authorized an appropriate negotiating unit for "administrators," which were defined as all public school employees employed primarily for administration of the school or schools of a school district and devoting at least fifty percent of their time in any one year to the duties of administration of the school or schools of a school district. N.D.C.C. § 15-38.1-02(1) and (2).

[¶ 10] Here, the primary issue is whether Hilton, a counselor who was certified under N.D.C.C. ch. 15-36, was a "teacher" within the meaning of N.D.C.C. ch. 15-38.1. The interpretation of a statute is a question of law, fully reviewable on appeal. *McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666. In construing N.D.C.C. ch. 15-38.1, our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language. *Barnes County Educ. Ass'n v. Barnes County Special Educ. Bd.*, 276 N.W.2d 247, 249 (N.D.1979). If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute. *Id.* However, if statutory language is ambiguous, a court may resort to extrinsic aids, including legislative history, to interpret the statute. *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). A statute is ambiguous when it is subject to different, but rational meanings. *Kroh v. American Family Ins.*, 487 N.W.2d 306, 307 (N.D.1992).

---

**1.** Chapter 15-38.1, N.D.C.C., was repealed by 2001 N.D. Sess. Laws ch. 181, § 21, and the current provisions for teacher representation and negotiation were reenacted at N.D.C.C. ch. 15.1-16.

[¶ 11]   In other contexts, we have said N.D.C.C. ch. 15 38.1 was ambiguous and subject to judicial interpretation. *Loney v. Grass Lake Pub. Sch. Dist.*, 322 N.W.2d 470, 472–73 (N.D.1982) (stating N.D.C.C. ch. 15–38.1 ambiguous regarding whether or not school district's only certified teacher-employee was appropriate negotiating unit entitled to negotiate with school district); *Fargo Educ. Ass'n v. Fargo Pub. Sch. Dist.*, 291 N.W.2d 267, 271–72 (N.D. 1980) (recognizing ambiguity in N.D.C.C. ch. 15–38.1 regarding subjects of negotiation); *Barnes County*, 276 N.W.2d at 250–51 (concluding N.D.C.C. ch. 15–38.1 ambiguous and applicable to county special education boards).

[¶ 12]   The definition of teacher "means and includes all public school employees certificated under chapter 15–36 and employed primarily as classroom teachers." Generally, a definition that uses the word "means" is exhaustive, while a definition that uses the word "includes" is partial and non-exclusive. North Dakota Legislative Drafting Manual 95 (2001). *See Americana Healthcare v. North Dakota Dep't. Human Serv.*, 510 N.W.2d 592, 594–95 n. 2 (N.D.1994). The use of both terms in the definition of teacher creates an internal inconsistency in that definition because an exhaustive and a non-exclusive definition can not be contemplated at the same time. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage*, 258 (2nd ed.1995) (citing G.C. Thorton, *Legislative Drafting* 166 (2nd ed.1979)). *See also* G.C. Thorton, *Legislative Drafting* 175 (3rd ed.1987). The definition of teacher also does not define the activities that constitute teaching and is not clear about its applicability to counselors who are certificated public school employees. We therefore conclude the definition of teacher in N.D.C.C. § 15–38.1–02(6) is subject to different rational interpretations and is ambiguous.

[¶ 13]   If a statute is ambiguous, we may resort to extrinsic evidence, including legislative history, to interpret that statute, *see County of Stutsman*, 371 N.W.2d at 325, and we may also give weight to a contemporaneous construction placed upon the statute by an attorney general's opinion. *United Hosp. v. D'Annunzio*, 514 N.W.2d 681, 684 (N.D.1994). Although we are not bound by an attorney general's opinion interpreting a statute, we will follow that opinion if it is persuasive. *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 47, 598 N.W.2d 820 (citing *D'Annunzio*, at 685). We may give additional weight to an attorney general's opinion implicitly approved by the Legislature. *See D'Annunzio*, at 684; *Horst v. Guy*, 219 N.W.2d 153, 159 (N.D.1974).

[¶ 14]   In 1974, the attorney general issued an opinion which addressed whether counselors were considered teachers under N.D.C.C. ch. 15–38.1. The attorney general's opinion concluded counselors certificated under N.D.C.C. ch. 15–36 were generally considered teachers for purposes of the teachers' representation and negotiation law:

I assume that guidance counselors are certificated as provided by Chapter 15–36 of the North Dakota Century Code. If they are not so certified they would not, of course, be considered as teachers for purposes of the negotiations law. Assuming they are certified, however, we note the definition of teacher adds another criteria, i.e., they must be employed primarily as classroom teachers. Both criteria must be met. However, we believe the purpose of the second criteria was to distinguish the teacher from the administrator, i.e., a person who had some administration duties but was primarily a classroom teacher

would be classified with the teachers rather than the administrators. A person who was employed for the purpose of devoting at least fifty percent of his time to the duties of administration would, on the other hand, be classified as an administrator even though he had some classroom duties. Thus, it appears to me the requirement of being employed primarily as a classroom teacher was to distinguish the individual from the administrator. A guidance counselor, although he might not teach in the classroom as that function is ordinarily considered would still be considered a teacher (unless he devoted fifty percent or more of his time to administration in which case he would be considered an administrator) for purposes of the negotiation law.

[¶ 15] The 1974 attorney general's opinion is consistent with the Legislature's statement of intent that N.D.C.C. ch. 15–38.1 was intended to "promote the improvement of personnel management and relations between school boards of public school districts and their certificated employees by providing a uniform basis for recognizing the right of public school certificated employees to join organizations of their own choice and be represented by such organization in their professional and employment relationships with the public school districts." N.D.C.C. § 15–38.1–01.

[¶ 16] The attorney general's opinion is also supported by the legislative history for N.D.C.C. ch. 15–38.1, which was enacted in 1969 N.D. Sess. Laws ch. 172. As introduced, "teacher" was defined to "mean[] and include[] all public school employees certificated under chapter 15–36 of the North Dakota Century Code," without a reference to the phrase "and employed primarily as classroom teachers." As introduced, the legislation also did not define "administrators," or an "appropriate nego-

tiating unit" for administrators. During the legislative process, Kenneth Underwood, the Fargo Superintendent of Schools, and George Dynes of the Dickinson School Board opposed the proposed legislation. *Hearing on H.B. 175 Before the House Education Committee*, 41st N.D. Legis. Sess. (Jan. 27, 1969) ["Hearing on H.B. 175"]. Underwood questioned the lack of an appropriate negotiating unit for administrators. *Hearing on H.B. 175, supra* (testimony of Kenneth Underwood, Fargo Superintendent of Schools). Dynes submitted a suggested amendment for the definition of teacher which added the phrase "and employed primarily as classroom teachers." *Hearing on H.B. 175, supra* (written testimony of George Dynes). Dynes' written testimony stated:

This would clearly provide that administrators would not be included in negotiating units. Also it avoids including a certified person who is no longer actually working as a classroom teacher. For example, in Dickinson, James Randall is employed as business manager in the Superintendent's office although he is a certified teacher. This type of legislation should not include that type of personnel.

*Id.*

[¶ 17] Although the remaining legislative history for H.B. 175 is sparse, the Legislature ostensibly combined the suggestions from Dynes and Underwood, which resulted in the applicable definition for "teacher" and separate definitions for "administrators" and "appropriate negotiating unit" for administrators. *See* 1969 N.D. Sess. Laws ch. 172, § 2.

[¶ 18] The Legislature's action during the 1969 legislative process is consistent with the attorney general's conclusion that the purpose of the "employed primarily as classroom teachers" element in the definition of teacher was to distin-

guish a teacher from an administrator, and that although counselors might not teach in the classroom as that function is ordinarily understood, they are considered teachers for purposes of the negotiation law unless they devote fifty percent or more of their time to administration. Since the 1974 attorney general's opinion, the Legislature has not changed the definition of teacher. The Legislature's implied approval of the attorney general's opinion gives even greater weight to the attorney general's interpretation of teacher for purposes of the teachers' representation and negotiation law. *See D'Annunzio,* 514 N.W.2d at 684; *Horst,* 219 N.W.2d at 159–60. We conclude the attorney general's opinion is persuasive and comports with the stated purpose and legislative history of N.D.C.C. ch. 15–38.1. We hold counselors who are certificated under N.D.C.C. ch. 15–36 and who do not devote more than fifty percent of their time to administration duties are teachers for purposes of the teachers' representation and negotiation law.

[¶ 19] Hilton was a counselor who was certificated under N.D.C.C. ch. 15–36, Teachers' Certification. *See* N.D.C.C. § 15–36–11 (1993). He has not claimed he devoted any time to administration duties. Hilton therefore was a teacher for purposes of the teachers' representation and negotiation law, and we conclude the trial court correctly decided Hilton was a member of the C.E.A. appropriate negotiating unit. Because Hilton was a member of the C.E.A. appropriate negotiating unit, he was bound under N.D.C.C. ch. 15–38.1 by the negotiated agreement between the C.E.A. appropriate negotiating unit and the School District.

### B

[¶ 20] Hilton argues the trial court erred as a matter of law in holding he was precluded by the result in the mandamus action from arguing he was not in the appropriate negotiating unit. Because we have concluded Hilton was part of the C.E.A. appropriate negotiating unit, it is not necessary to address this issue.

### III

[¶ 21] Hilton has not specifically raised an issue regarding the trial court's dismissal of his claim for breach of a duty of fair representation. Hilton claimed the C.E.A. had a duty to fairly represent him and to bargain in good faith on his behalf in negotiations with the School District. The trial court decided this claim after trial, ostensibly finding the C.E.A. did not breach a duty of fair representation to Hilton. We review a trial court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). We are not left with a definite and firm conviction the trial court made a mistake in finding the C.E.A. did not breach a duty of fair representation to Hilton. We therefore conclude the court's finding is not clearly erroneous.

### IV

[¶ 22] Hilton argues the trial court erred in granting summary judgment dismissal of his claim for intentional interference with contract. Hilton alleged the defendants' assertion he was part of the appropriate negotiating unit and their mandamus action against the School District intentionally interfered with his contract with the School District.

[¶ 23] Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. *Van Valkenburg v. Paracelsus Healthcare Corp.,* 2000 ND

38, ¶ 17, 606 N.W.2d 908. Issues of fact may become questions of law if reasonable persons could reach only one conclusion from the facts. *Mandan Educ. Ass'n v. Mandan Pub. Sch. Dist.*, 2000 ND 92, ¶ 6, 610 N.W.2d 64. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of their claim and on which they will bear the burden of proof at trial. *Dahlberg v. Lutheran Soc. Serv.*, 2001 ND 73 ¶¶ 11, 42, 625 N.W.2d 241.

[¶ 24] To establish a prima facie case for intentional interference with contract, a plaintiff must prove (1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification. *Tracy v. Central Cass Pub. Sch.*, 1998 ND 12, ¶ 9, 574 N.W.2d 781 (citing *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D.1984)). *See Messiha v. State*, 1998 ND 149, ¶ 10, 583 N.W.2d 385; *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991); *Hennum v. City of Medina*, 402 N.W.2d 327, 336 (N.D. 1987). *See also Fankhanel v. M & H Const. Co., Inc.*, 1997 ND 20, ¶ 8, 559 N.W.2d 229 (applying Minnesota law).

[¶ 25] In *Fankhanel*, 1997 ND 20, ¶¶ 7–8, 559 N.W.2d 229, we applied similar Minnesota law for intentional interference with contract to an analogous factual situation. In *Fankhanel*, at ¶ 2, Fankhanel refused to pay M & H Construction for work on Fankhanel's home, claiming the work was defective. Fankhanel was an independent trucker with a written contract to deliver construction products for Kost. *Id.* at ¶ 3. M & H Construction informed Kost that M & H Construction might take its business elsewhere if Fankhanel delivered construction products to M & H Construction's job sites. *Id.* at ¶ 4. After Kost told Fankhanel to resolve his dispute with M & H Construction, Fankhanel still refused to pay M & H Construction, and Kost quit

using Fankhanel to deliver construction products. *Id.* at ¶ 4.

[¶ 26] Fankhanel sued M & H Construction for tortious interference with Fankhanel's contract with Kost. *Fankhanel*, 1997 ND 20, ¶ 5, 559 N.W.2d 229. The trial court granted M & H Construction summary judgment on Fankhanel's claim for tortious interference with contract, holding M & H Construction was justified in imposing a condition on future delivery contracts with Kost. *Id.* We affirmed the summary judgment, concluding M & H Construction had a legitimate business reason and was justified in refusing to accept Kost products delivered by Fankhanel. *Id.* at ¶¶ 13–14. We recognized that ordinarily justification is a question of fact, but justification can be decided as a matter of law by showing a defendant was justified by a lawful object which he had a right to assert. *Id.* at ¶ 13.

[¶ 27] Hilton has not suggested any argument that would preclude application of the rationale from *Fankhanel* to our law for intentional interference with contract, and we apply that rationale to this case. *Cf. Security Nat'l. Bank v. Wald*, 536 N.W.2d 924, 927 (N.D.1995) (stating that in determining whether an actor's conduct is extreme and outrageous for purposes of intentional infliction of emotional distress, actor is not liable for insisting upon legal rights in permissible way even though actor is aware that insistence is certain to cause emotional distress).

[¶ 28] Under N.D.C.C. ch. 15-38.1, Hilton was part of the C.E.A. appropriate negotiating unit and was bound by the negotiated agreement between the C.E.A. and the School District. The C.E.A. was justified, as a matter of law, in requiring the School District to issue Hilton a contract in compliance with the negotiated agreement and in bringing a mandamus action to achieve a lawful object which it had a right to assert. We conclude Hil-

ton's claim for intentional interference with contract fails because the C.E.A. was justified, as a matter of law, in requiring compliance with the negotiated agreement. We therefore affirm the summary judgment dismissal of Hilton's claim for intentional interference with contract.

## V

 [¶ 29] Hilton claims the trial court erred in dismissing the individual defendants from the action. The trial court concluded the N.D.E.A. and the C.E.A. were the appropriate negotiating units for the School District's certificated teaching personnel, and the individual defendants were not part of the negotiating process once the School District recognized the C.E.A. as the exclusive negotiating unit for the School District's certificated teachers. Because we have concluded the C.E.A. was the exclusive negotiating unit for the School District's certificated teaching personnel and Hilton has not established the C.E.A. was liable under any of his claims for relief against the C.E.A., we conclude the trial court did not err in dismissing Hilton's claims against the individual members of the C.E.A.

## VI

[¶ 30] Hilton claims the trial court erred in denying his motion to amend his pleading to allege punitive damages.

[¶ 31] Punitive damages are not allowed in the absence of compensatory damages. *See Blair v. Boulger*, 336 N.W.2d 337, 341 (N.D.1983); *Riebe v. Riebe*, 252 N.W.2d 175, 178 (N.D.1977). Because Hilton failed to establish he was entitled to compensatory damages, he was not entitled to punitive damages.

[¶ 32] Moreover, a motion to amend a pleading to add a claim for punitive damages is submitted to the discretion of a trial court, and we will not reverse an order denying a motion to amend absent an abuse of discretion. *First Trust Co. v. Scheels Hardware & Sports Shop Inc.*, 429 N.W.2d 5, 11 (N.D.1988). A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner. *Bertsch v. Duemeland*, 2002 ND 32, ¶ 33, 639 N.W.2d 455. We conclude the trial court did not act arbitrarily, capriciously, or unreasonably in denying Hilton's motion to amend his complaint to include a claim for punitive damages. The court therefore did not abuse its discretion.

## VII

[¶ 33] We affirm the judgment dismissing Hilton's action.

[¶ 34] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER AND DALE V. SANDSTROM, JJ.